OPINION
Tonya Silcott appeals from her conviction and sentence for possession of crack cocaine.
On February 28, 1996, Tonya Silcott was fined by the Dayton Municipal Court for a traffic violation. Silcott agreed to a payment plan which required her to pay the fine in full by March 28, 1996. Silcott failed to pay the fine as promised, however, and on April 25, 1996, the court issued a warrant for her arrest. An employee of the Dayton Municipal Court Clerk of Courts Office entered information concerning Silcott's arrest warrant into the computerized records of both the court and the Dayton Police Department.
On May 15, 1996, Tonya Silcott appeared in the clerk's office and paid her delinquent traffic fines, whereupon the warrant for Silcott's arrest was withdrawn and removed from the court's records by an employee of the clerk's office. That employee, however, inadvertently failed to also remove Silcott's arrest warrant from the computerized records of the Dayton Police Department, as should have been done. Thus, the police department's records continued to show an active outstanding arrest warrant for Silcott when, in fact, that warrant had been withdrawn by the court.
Some one and one-half years later, on November 8, 1997, Dayton police were dispatched to a residence on Nordale Avenue to investigate a possible child abuse. Tonya Silcott was present at the scene. As part of their routine investigation procedures, Dayton police interviewed everyone present and ran each person's name through their computerized records. When police ran Silcott's name through the computer, their records showed the active outstanding arrest warrant for non-payment of traffic fines. Although both Silcott and her husband explained to police that those fines had been paid and that they had a receipt at home, police nevertheless arrested Silcott and transported her to jail. A search of Silcott's person incident to her arrest revealed that she was in possession of 1.96 grams of crack cocaine.
Tonya Silcott was indicted on one count of possessing crack cocaine in violation of R.C. 2925.11. Silcott filed a motion to suppress the crack cocaine recovered from her person by police as the fruit of an unlawful arrest which violated her Fourth Amendment rights, because the warrant for her arrest had been withdrawn by the court before police arrested her. A hearing was held, following which the trial court overruled Silcott's motion to suppress.
The trial court did not question that Silcott's arrest violated her Fourth Amendment rights. The court held, however, in reliance upon Arizona v. Evans (1995), 514 U.S. 1, that the exclusionary rule, which is a judicially created remedy designed to prevent future violations of Fourth Amendment rights through its deterrent effect, would not be advanced in any significant way by suppressing the evidence in this case because the failure to withdraw the warrant for Silcott's arrest from the police department's records was the result of an inadvertent error committed by a court employee, not police misconduct. Thus, no unlawful or improper conduct by the police that could warrant application of the exclusionary rule was demonstrated.
After the trial court overruled her motion to suppress, Silcott entered a no contest plea to the possession charge, was found guilty by the trial court, and was sentenced to five years of community control sanctions. From her conviction and sentence Silcott has timely appealed to this court.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE FOUND PURSUANT TO THE ILLEGAL ARREST OF APPELLANT.
Silcott argues that police have a responsibility, consistent with the Fourth Amendment's promise that all citizens shall be free from unreasonable searches and seizures, to periodically check, update, and verify the accuracy of the data base of their computerized record keeping systems if they rely upon that information to investigate criminal activity and make arrests. According to Silcott, the police in this case are "at fault" for failing to take any steps to verify the accuracy of the information they had regarding the warrant for Silcott's arrest, and for relying upon that information when it had become stale some eighteen months earlier. Silcott asserts that suppressing the evidence in this case would deter police in the future from the current practice of blindly relying upon computer based record systems.
The State argues that Silcott's unlawful arrest resulted from a mistake committed by a court employee, not unlawful or even negligent conduct on the part of the police. Under the present system, it is the responsibility of the clerk of court's office to inform the police department whenever an arrest warrant is issued or withdrawn by the court. The State contends that reliance by the police upon the clerk of courts for that information is not unreasonable, because the problem which occurred in this case is rare. In that regard, the State points to the testimony of a deputy clerk of court, that, in her five years of employment in that position, she recalls no other case in which a warrant had mistakenly remained "active" in the police department's computers despite its having been withdrawn by the court.
In Arizona v. Evans (1995), 514 U.S. 1, a case very similar to the one before us, the United States Supreme court refused to suppress evidence which was the product of an illegal arrest where that illegal arrest resulted from an error committed by a court employee. The following facts and holding are from the court's syllabus:
 Respondent was arrested by Phoenix police during a routine traffic stop when a patrol car's computer indicated that there was an outstanding misdemeanor warrant for his arrest. A subsequent search of his car revealed a bag of marijuana, and he was charged with possession. Respondent moved to suppress the marijuana as the fruit of an unlawful arrest, since the misdemeanor warrant had been quashed before his arrest. The trial court granted the motion, but the Court of Appeals reversed on the ground that the exclusionary rule's purpose would not be served by excluding evidence obtained because of an error by employees not directly associated with the arresting officers or their police department. In reversing, the Arizona Supreme Court rejected the distinction between clerical errors committed by law enforcement personnel and similar mistakes by court employees and predicted that the exclusionary rule's application would serve to improve the efficiency of criminal justice system recordkeepers.
Held:
* * *
 2. The exclusionary rule does not require suppression of evidence seized in violation of the Fourth Amendment where the erroneous information resulted from clerical errors of court employees. The exclusionary rule is a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through its deterrent effect. However, the issue of exclusion is separate from whether the Amendment has been violated. The Amendment does not expressly preclude the use of evidence obtained in violation of its commands, and exclusion is appropriate only where the rule's remedial objectives are thought most efficaciously served. The same framework that this Court used in United States v. Leon, (1984) 468 U.S. 897, 82 L Ed 2d 677, 104 S Ct 3405, to determine that there was no sound reason to apply the exclusionary rule as a means of deterring misconduct on the part of judicial officers responsible for issuing search warrants applies in this case. The exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. See id., at 916, 82 L Ed 2d 677, 104 Ct 3405. In addition, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. See ibid. In fact, the Justice Court Clerk testified that this type of error occurred only once every three or four years. Finally, there is no basis for believing that application of the exclusionary rule will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Since they are not adjuncts to the law enforcement team engaged in ferreting out crime, they have no stake in the outcome of particular prosecutions. Application of the exclusionary rule also could not be expected to alter an arresting officer's behavior, since there is no indication that the officer here was not acting reasonably when he relied upon the computer record.
In reviewing Evans, we note that the United States Supreme Court declined to apply the exclusionary rule in that case on account of the "misconduct" of a court employee, that is, the employee's failure to comply with established record keeping procedures. That is not the focus of Silcott's argument in this case. Rather, Silcott argues that the Dayton Police Department is chargeable with misconduct because it failed to purge its records of stale, inaccurate data, which in this case led to Silcott's illegal arrest and the search incident to that arrest.
We believe that application of the exclusionary rule is not limited to the conduct of the officer who actually performs the search or seizure. The historical purpose behind the exclusionary rule also reasonably applies to misconduct by supervisors or administrators in a law enforcement agency when that misconduct results in an illegal search or seizure. As Justice O'Connor noted in her concurring opinion in Evans:
 While the police were innocent of the court employee's mistake, they may or may not have acted reasonably in their reliance on the recordkeeping system itself. Surely it would not be reasonable for the police to rely, say, on a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests, even years after the probable cause for any such arrest has ceased to exist (if it ever existed).
514 U.S., at 17.
It is worth noting, we believe, that in Evans the warrant which led to the defendant's arrest had been quashed but seventeen days before. Here, Silcott's warrant was withdrawn eighteen months earlier. The State cannot claim that the Dayton Police Division lacked a reasonable opportunity to verify the information in its computerized records. However, the issue presented is whether its failure to do so rendered its arrest of Silcott, and the search incident to her arrest which yielded the crack cocaine, unreasonable.
To pass constitutional muster, the State was required only to offer some justification for its conduct which rendered its seizure of Tonya Silcott reasonable. It did that by showing that the officer who arrested Silcott relied on information in the Police Department's records that the Department had been provided by the clerk of courts. The State was not required to rebut the suggestion that its failure to verify the information that the clerk provided rendered the seizure and subsequent search of Silcott unreasonable, absent some showing that such information was on prior occasions found to be inaccurate for similar reasons. No such showing was made. Indeed, the testimony of the deputy clerk preponderates to the contrary.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
Andrew T. French, Esq., Arvin S. Miller, Esq., Hon. Jeffrey E. Froelich.